UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID BELCHER,<br><br>    Plaintiff,<br><br>    -v-<br><br>VOLTA INC., et al,<br><br>    Defendants. | 23-cv-1406 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

    Plaintiff David Belcher brought this putative shareholder class action against defendant Volta Inc. ("Volta") and six individuals who served on Volta's board of directors. The complaint alleged that, in connection with Volta's potential acquisition by Shell USA, Inc. ("Shell"), defendants filed a materially misleading proxy statement with the SEC, in violation of federal securities law and in breach of fiduciary duties under Delaware law. Because the acquisition had not then occurred, the complaint sought an injunction to supplement the proxy statement with additional information. Mere weeks after the complaint was filed, however, the case became moot because defendants amended the proxy statement to add the very disclosures Belcher requested. Contending that his filing of this suit created a common benefit for Volta shareholders by causing Volta to provide those supplemental disclosures, Belcher now moves for attorneys' fees. The Court hereby denies the motion because Belcher has not shown

1

that those disclosures, which did not correct any false or misleading statements and contained public information, provided a substantial benefit for Volta's shareholders.

I. Factual and Procedural Background

Volta operates a network of charging stations for electric vehicles throughout the United States and Europe. ECF No. 1 ("Compl."), ¶ 19. On January 18, 2023, Volta announced that its board of directors had approved a sale of the company to Shell for $0.86 per share. Id. ¶ 2. In connection with that potential acquisition, on February 8, 2023, Volta filed, with the authorization of the individual defendants, a preliminary proxy statement with the SEC. Id. ¶ 3. The proxy explained that Volta had begun talks with Shell as early as October 2021 about "potential areas of collaboration between Volta and the Shell group," and that Volta had received an unsolicited acquisition proposal from a different company in July 2022. ECF No. 17-1 ("Proxy)", at 31, 33.

During the summer of 2022, Volta separately engaged Barclays and Goldman Sachs as financial advisors. Id. at 33. Between September and November of 2022, Goldman Sachs and Barclays contacted "potential strategic purchasers or investors" on Volta's behalf. Id. at 35. Goldman Sachs and Barclays each terminated their respective engagement letters with Volta in late November or early December 2022. Id. at 38. In late December 2022, both banks

2

declined a request from Volta to provide a fairness opinion about a December 23 acquisition proposal from Shell. Id. at 39. "On January 1, 2023, Goldman Sachs sent to Volta disclosures regarding certain of Goldman Sachs' investment banking relationships with Shell plc." Id. at 41. Similarly, "[o]n January 13, 2023, Barclays sent to Volta disclosures regarding Barclays' relationships with Volta, Shell plc, . . . and certain other potential counterparties." Id. at 42. The next day, Volta executed new engagement letters with Goldman Sachs and Barclays, "for the purpose of providing advisory services to Volta with respect to a potential sale of Volta to Shell," even though Goldman Sachs and Barclays would not be providing formal fairness opinions. Id. at 42-43. The engagement letters provided that both Goldman Sachs and Barclays would "be entitled to receive a fee . . . contingent upon the consummation of the merger." Id.

On February 21, 2023, Belcher filed this putative class action against Volta and the individual defendants, bringing a claim under Section 14(a) of the Securities Exchange Act and accompanying Rule 14a-9, as well as claims for control person liability under Section 20(a) of the Exchange Act and breach of fiduciary duty under Delaware law against the individual defendants, contending that the preliminary proxy statement was materially misleading.[1] Compl.

---

[1] The individual defendants are Vincent T. Cubbage, Katherine J. Savitt, Eli Aheto, John T. Tough, Bonita C. Stewart, and Martin

3

¶¶ 96-116. In particular, the complaint alleged that the proxy failed to disclose specific details about the relationships Barclays and Goldman Sachs had with Shell and failed to specify "the amount of the fees that will be payable to Goldman Sachs and Barclays upon consummation of the Merger." Id. ¶¶ 82, 85-87. The complaint also made the conclusory assertion that Volta's board never authorized the engagement of Barclays and Goldman Sachs for advice on the potential Shell acquisition. Id. ¶¶ 80-81. The complaint sought an injunction requiring defendants to refrain from holding a shareholder vote or consummating the merger without disclosing the above information. Id., Prayer for Relief.

On March 9, 2023, Belcher stated his intention to move for a preliminary injunction. See ECF No. 16-1. The next day, however, the parties informed the Court that the case had become moot because Volta agreed to supplement the proxy with the requested disclosures in advance of the scheduled shareholder vote. Id. On May 17, 2023, Belcher moved for attorneys' fees. ECF No. 15 ("Mem."). Defendants filed an opposition on June 2, 2023, ECF No. 19 ("Opp."), and Belcher filed a reply on June 12, 2023, ECF No. 20 ("Reply").

## II. Legal Background

### A. Federal Law

---

Lauber, all of whom served on Volta's board at the relevant time. Compl. ¶¶ 12-17.

"Generally, courts may not award attorneys' fees to a prevailing party absent statutory or contractual authority." Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 54 F.3d 69, 71 (2d Cir. 1995). "However, courts have carved out certain exceptions to the general rule, one of which is the common-benefit rule." Id. "The common-benefit rule permits a prevailing party to obtain reimbursement of attorneys' fees in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class and where it is possible to spread the costs proportionately among the members of the class." Id.[2] "This exception is premised on the equitable principle that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Id. "The common-benefit rationale often is applied in suits by a group of shareholders against a corporation to vindicate some substantial right of all the shareholders of the company." Id. "Although the benefit need not be pecuniary, it must be something more than technical in its consequence and be one that accomplishes a result which affects the enjoyment or protection of an essential right to the stockholder's interest." Id.

---

[2] Here and elsewhere, all internal alterations, citations, ellipses, and quotation marks have been omitted unless otherwise indicated.

"[A]n award of plaintiffs' attorney's fees is not precluded because no judgment or consent decree was entered and the complaint was dismissed as moot." Koppel v. Wien, 743 F.2d 129, 135 (2d Cir. 1984). "Fees may be awarded even where there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." Id. "However, before awarding fees in a case that has become moot, the district court must determine whether plaintiff's suit was a substantial cause of the benefit obtained." Savoie v. Merchants Bank, 84 F.3d 52, 56-57 (2d Cir. 1996). "When the defendant has taken action to moot the lawsuit, defendant bears the burden of proof to establish the absence of a causal connection between the lawsuit and the defendant's action." Id. at 57. That said, there is no additional requirement to show "that the complaint ha[d] sufficient merit to survive a motion to dismiss." Id. "In a case that has become moot, the parties do not have the same incentive to fully litigate the issues and develop the record, because the only real-world consequences remaining are matters collateral to the merits of the suit." Id. "Rather than undertake a detailed assessment of the complaint, [the] focus [is] on whether the lawsuit played a substantial role in the defendant's decision to take corrective action." Id.

B. Delaware Law

In addition to the federal securities claims, the complaint also brought a claim for breach of fiduciary duty under Delaware

6

law based on the same alleged under-disclosures. Compl. ¶¶ 111-16. "Under the corporate benefit doctrine" of Delaware law, "plaintiffs may be reimbursed for their fees and expenses if (1) the suit was meritorious when filed, (2) the defendants took an action that produced a corporate benefit before the plaintiffs obtained a judicial resolution, and (3) the suit and the corporate benefit were causally related." EMAK Worldwide, Inc. v. Kurz, 50 A.3d 429, 432 (Del. 2012).

"Directors of Delaware corporations have a fiduciary duty to shareholders to exercise due care, good faith and loyalty whenever they communicate publicly or directly with shareholders about the corporation's affairs." Emerald Partners v. Berlin, 726 A.2d 1215, 1223 (Del. 1999). "When stockholder action is requested, directors are required to provide shareholders with all information that is material to the action being requested and to provide a balanced, truthful account of all matters disclosed in the communications with shareholders." Id. Accordingly, a breach of fiduciary duty claim that is premised on "alleged proxy statement misstatements or omissions" must show "materiality" to prevail. Id.; see also In re Walt Disney Co. Derivative Litig., 731 A.3d 342, 376 (Del. Ch. 1998) ("A board can breach its duty of disclosure under Delaware law in a number of ways -- by making a false statement, by omitting a material fact, or by making partial disclosure that is materially

7

misleading."), aff'd in part and rev'd in part on other grounds sub nom., Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

III. Analysis

The Court denies the motion for attorneys' fees because Belcher has not shown that "the litigation has conferred a substantial benefit on" Volta shareholders. Amalgamated Clothing, 54 F.3d at 71. Although there is no serious dispute that "the lawsuit played a substantial role in the defendant's decision to take corrective action" by adding supplemental disclosures to the proxy statement, Savoie, 84 F.3d at 57, Belcher has not identified any false or misleading statement in the preliminary proxy statement that required correction. Moreover, the supplemental disclosures, while not previously embedded in the proxy statement itself, consisted of publicly available information and were thus not material.

As an initial matter, defendants make no attempt to rebut that Belcher's lawsuit is what caused Volta to amend the proxy statement with supplemental disclosures. See Opp. at 10-23 (making no such argument). Indeed, any such argument would not have been well taken. Volta's mooting of the case -- by providing the exact relief requested -- occurred within a day of Belcher announcing his intention to move for a preliminary injunction. See ECF No. 16-1.

Nevertheless, a Section 14(a) plaintiff is entitled to fees under the common-benefit doctrine only if such corrective action "has conferred a substantial benefit on" shareholders. Amalgamated Clothing, 54 F.3d at 71. Before Belcher filed suit, the preliminary proxy statement had already informed shareholders that, in January 2023, Goldman Sachs and Barclay "sent to Volta disclosures regarding," respectively, "Goldman Sachs' investment banking relationships with Shell plc," and "Barclays' relationships with . . . Shell plc." Proxy at 41-42. In other words, it was no secret to Volta shareholders that Goldman Sachs and Barclays had banking relationships with Shell, Volta's acquirer. The complaint alleges that the preliminary proxy statement did not additionally disclose what those specific relationships were, Compl. ¶¶ 86-87, but Belcher has not explained how such additional disclosures "affect[] the enjoyment or protection of an essential right to the stockholder's interest," Amalgamated Clothing, 54 F.3d at 71.

It is well established under Section 14(a) of the Exchange Act and accompanying Rule 14a-9 that shareholders have a right to receive a proxy statement that is free of false or misleading material statements. See 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). But the omission of even a material fact from a proxy statement is not actionable, even if shareholders would find it important or useful to know in deciding whether to approve a merger, unless the proxy statement contains a falsehood or a

9

statement that is misleading in the fact's absence. See <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083, 1087 (1991) ("SEC Rule 14a-9 . . . prohibits the solicitation of proxies by means of materially <u>false or misleading statements</u>." (emphasis added)). Belcher has not identified any part of the preliminary proxy statement that was false or misleading, let alone materially so, simply because it did not list, as the complaint does, the specific banking relationships that Shell had with Goldman Sachs and Barclays.

The same point holds for the preliminary proxy statement's failure to specify the fees that Goldman Sachs and Barclays would receive for a successful merger between Shell and Volta. The proxy explained that, on January 14, 2023, Volta entered into engagement letters with Goldman Sachs and Barclays "for the purpose of providing advisory services to Volta with respect to a potential sale of Volta to Shell." Proxy at 42-43. The engagement letters provided, the proxy further explained, that both Goldman Sachs and Barclays would "be entitled to receive a fee . . . contingent upon the consummation of the merger." <u>Id.</u> Even assuming <u>arguendo</u> that the specific amount of the fee would have been material to a reasonable shareholder in determining whether to approve the merger, that does not mean that the proxy statement contained a

false or misleading representation simply because it omitted that amount.³

Setting aside whether the supplemental disclosures corrected any false or misleading representations in the preliminary proxy statement, Belcher failed to achieve a substantial benefit for Volta shareholders for an independent reason: The supplemental disclosures did not include anything that was not already public information. "Indeed, [Belcher] was himself aware of that information -- and was able to allege it in the [complaint] -- precisely because it was reasonably available to the public." Zappia v. Myovant Sciences Ltd., -- F. Supp. 3d --, --, 2023 WL 8945267, at *5 (S.D.N.Y. Dec. 28, 2023). "Omitted information in a proxy statement is only material to a reasonable investor if it 'significantly alters the total mix of information made available.'" Id. (quoting Koppel v. 4987 Corp., 167 F.3d 125, 131 (2d Cir. 1999)). "Because the total mix of information included the" information contained in the supplemental disclosures, those disclosures "could not have significantly altered a reasonable

---

³ Belcher does not argue that Volta shareholders received a substantial benefit from the inclusion in the supplemental disclosures of the specific reassurance "that the Board had been apprised of, and later approved[,] the retention of and payments to Goldman and Barclays." Mem. at 10 n.2. Indeed, the preliminary proxy statement had all but said as much by representing that "Volta entered into an engagement letter with" Goldman Sachs and Barclays and that those engagement letters included fees contingent on Shell acquiring Volta. Proxy at 41-43.

investor's impression." Id. The reinforcement of immaterial information is not "a substantial benefit" for shareholders. Amalgamated Clothing, 54 F.3d at 71.

For the same reasons, Belcher is no more entitled to attorneys' fees under Delaware law. Because Belcher cannot show that any of the supplemental disclosures were material, the claim for breach of fiduciary duty under Delaware law was not "meritorious when filed." EMAK Worldwide, 50 A.3d at 432; see Emerald Partners, 726 A.2d at 1223.[4] Similarly, the additional disclosure of immaterial information does not "produce[] a corporate benefit." EMAK Worldwide, 50 A.3d at 432. As a result, the state-law claim does not provide a basis for attorneys' fees here in the absence of entitlement under the federal common-benefit doctrine. Because Belcher is not entitled to attorneys' fees under either federal or state law, the Court refrains from any assessment of whether Belcher's requested fees would be reasonable.

IV. Conclusion

---

[4] "Under Delaware law, as under federal law, the materiality standard requires 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" In re Sauer-Danfoss Inc. S'holders Litig., 65 A.3d 1116, 1127-28 (Del. Ch. 2011) (quoting Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (Del. 1985)).

For the foregoing reasons, the Court hereby denies Belcher's motion for attorneys' fees. The Clerk is respectfully directed to close document 14 on the docket and to close the case.

SO ORDERED.

New York, NY
February 2, 2024

_____
JED S. RAKOFF, U.S.D.J